# Federal Defenders
## OF NEW YORK, INC.

Southern District
300 Quarropas Street, Room 260
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 997-6872

---

David E. Patton
*Executive Director
and Attorney-in-Chief*

Susanne Brody
*Attorney-in-Charge
White Plains*

February 5, 2015

BY ECF AND HAND

The Honorable Vincent L. Briccetti
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:   *United States v. Richard Dinizo*, **13cr0306-VB**

Dear Judge Briccetti:

I write on behalf of my client, Richard Dinizo, who is scheduled to be sentenced by the Court on February 17, 2015. On May 7, 2014, Mr. Dinizo pleaded guilty to the six counts in the Superseding Information, which charge him with five counts of violating 18 U.S.C. § 2251(a) and one count of violating 18 U.S.C. § 2252A(a)(1). A plea agreement between the parties identifies a guideline calculation that concludes with a total adjusted offense level of 43, which produces a guideline range of life. The § 2251(a) counts each carry a 15-year mandatory minimum, while the § 2252A(a)(1) count carries a 5-year mandatory minimum. Mr. Dinizo requests that the Court impose a sentence of 360 months' (or the 30 year maximum) prison on each of the § 2251(a) counts, 240 months' (or the 20 year maximum) prison on the § 2252A(a)(1) count, and order that the sentences for all six counts run concurrent to one another.

In addition, Mr. Dinizo asks the Court to order the sentence in this case run concurrent to the undischarged term of 25 years to life imposed by the Westchester County Supreme Court on February 18, 2014. See U.S.S.G. § 5G1.3(b). Finally, Mr. Dinizo asks the Court to credit him with the time he has served in state custody since March 15, 2013, on that undischarged term of imprisonment since his initial appearance before the Magistrate Court on this matter.[1] This is the greatest sentence that is consistent with the parsimony clause at 18 U.S.C. § 3553(a).

---

[1] In its Pre-Sentence Report ("PSR"), the probation office also recommends 30 years' prison concurrent on each of the five § 2251(a) counts. PSR at 25, 28. The PSR also recommends 20 years' prison for the § 2252A(a)(1) count, but recommends that this term run consecutive to the 30 year terms. Id. The PSR does recommend that the sentence imposed in this case be ordered to run concurrent with the 25 years to life sentence imposed by the Westchester County Supreme Court. Id. at 28.

A.      **Mr. Dinizo's Background and Personal History.**

Mr. Dinizo was born in Colledimezzo, Italy, in 1955, and lawfully emigrated to the United States with his parents in 1961. He has held lawful permanent resident status since then and has not naturalized. He grew up in Elmsford, New York, where he graduated from high school. His parents raised him and his siblings, Teresa Dinardo, Rita Dinizo, and Domenick Denizo. But for Domenick, Mr. Denizo's siblings all remain in Elmsford. Mr. Dinizo always has had regular contact with all his siblings. They remain a close-knit family still today as evidenced by their attached letters. See Exhibits A to C. Mr. Dinizo has a great deal of support from other family and friends. See Exhibits D to L.

Other than spending a bit more than a year in Oneonta for college, Mr. Dinizo lived at home with his parents until he was 25. He left college to begin working with his father, who was a union carpenter. He moved out of his parents' home after he married his wife in 1980. Mr. Dinizo remained with his wife until he moved out of the home in late 2011. Mr. Dinizo never resided outside of Westchester.

After growing up in a home where his father was a union carpenter, it is perhaps unsurprising that Mr. Dinizo also became a carpenter. Mr. Dinizo worked as a general contractor for approximately 30 years and specialized in classic woodworking. Mr. Dinizo worked hard to provide for his family, and was able to purchase a two-family home in Elmsford, New York, before finally purchasing a second home and settling in Cortlandt Manor. As the economy ebbed in the mid 2000's, so too did Mr. Dinizo's company. In 2004, Mr. Dinizo's mother passed away. Already dealing with periodic episodes of depression, Mr. Dinizo found himself struggling personally.

As indicated in the PSR, Mr. Dinizo has no criminal history that scores. See PSR at ¶¶ 82-83. The charges in the case before the Westchester County Supreme Court "stem from the instant offense," according to the PSR. Id. at ¶ 82. In February 2014, the Westchester County Supreme Court imposed concurrent terms of 25 years to life imprisonment on each of three counts of Predatory Sexual Assault Against a Child. Id.

Since his arrest, Mr. Dinizo has lost his family. His wife severed all ties with him and will not communicate with him. Mr. Dinizo has sporadic telephone contact with his older daughters, but no visits.

He informed probation that he is remorseful. See PSR at ¶ 41.

C.      **Factors That Should Be Considered in Sentencing Mr. Dinizo.**

      1.      **The Nature and Circumstances of the Offense.**

The offense conduct admittedly is egregious and utterly reprehensible. Mr. Dinizo took advantage of minors who were unaware that they were being victimized. He then distributed the images giving rise to the exploitation charge, which depicted him with the minors. A 360-month total sentence, which is near the top of the guidelines and *is the statutory maximum* for a § 2251(a) offense (and 10 years more than the statutory maximum for a § 2252A(a)(1) offense), risks being a life sentence even

if imposed concurrent to the undischarged state term given his current age. Thus, it will severely punish Mr. Dinizo for the severity of the conduct. The New York State Department of Corrections website identifies Mr. Dinizo's earliest parole eligibility date as March 9, 2038. See Exhibit M. Mr. Dinizo will be more than 83 years old by that time. The likelihood of Mr. Dinizo receiving parole, which in 2013 occurred in only 24% of all cases according to the state's statistics, available at http://www.doccs.ny.gov/Research/Reports/2014/Parole_Board_Dispositions_2013.pdf, is far from favorable for him. Thus, it is possible that the state will not ever parole him.

The PSR does not indicate that the victims are aware that they were sexually abused by Mr. Dinizo. Fortunately, none appear to suffer psychologically at this time. See PSR at ¶ 32. Admittedly, Mr. Dinizo's conduct has traumatized and infuriated the victims' parents. Mr. Dinizo knows and regrets that this pain can never be undone.

Mr. Dinizo entered a plea of guilty before the Court and allocuted regarding his conduct. His pleading guilty alleviated the need for trial and ensured that the minor victims would not have to testify. It also spared the families the agony associated with trial and having to relive events. A guilty plea also avoided publicity sometimes associated with trial.

## 2. History and Characteristics of The Defendant.

Mr. Dinizo will be 60 years old when he appears before the Court for sentencing. Though he has lost his immediate family, he still has a supportive network of family and friends. See Exhibits A to L. These individuals will, if necessary, help Mr. Dinizo in the future post-release, notwithstanding his deportation from the United States, which mitigates. See United States v. Wachowiak, 412 F.Supp.2d 958 (E.D. Wisc. Feb. 3, 2006).

Mr. Dinizo had been a hard worker for several decades. He owned and operated his own business to support himself and his family. The length of his business' tenure is indicative of the type of person he had been for more than 50 years of his life. During much of this time, Mr. Dinizo also lived a law-abiding lifestyle. These two factors suggest a previously remarkable life, which is supportive of the requested sentence. See United States v. Marsh, 820 F.Supp.2d 320, 360 (E.D.N.Y. 2011); United States v. Ward, 814 F.Supp 23 (E.D. Va. 1993); see also United States v. Huckins, 529 F.3d 1312 (10th Cir. June 25, 2008) (explaining that "a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis.").

Mr. Dinizo's current age militates for the sentences on all six count to run concurrent with one another, as well as with the sentence imposed by the Westchester County Supreme Court. The potential for an octogenarian inmate entering federal custody at some point in the future requires consideration of potential health issues, the costs associated with housing and treating an elderly inmate, managing an elderly inmate's incarceration, as well as a reduced likelihood of recidivism by that time. Projecting out Mr. Dinizo's age in 2038 in conjunction with the sentencing guidelines' advisory "infirmity" standard at § 5H1.1 suggests an inverse relationship between the two. "Conditions that may be relatively minor or not life-threatening in a younger person, become life-threatening in the older defendant." United States v. Baron, 914 F.Supp. 660, 662 (D. Mass. 1995). "Few cases involve defendants in this age range, and those that do have found it significant."

Id. at 662; see also e.g., United States v. Moy, 1995 WL 311441 (N.D.Ill.1995) (approving downward departure based upon defendant's advanced age, aggravated health condition, and emotionally depressed state). The costs of treating and housing such an inmate have not been lost on the courts. See e.g., Baron, 914 F.Supp. at 664 (noting that keeping infirm elderly people behind bars can cost up to three times more than imprisoning younger offenders) (citing Molly Fairchild James, The Sentencing of Elderly Criminals, 29 AM. CRIM. L. REV. 1025, 1040 (1992)).

Somewhat related to this issue of age and infirmity, "management problems with elderly inmates, . . . are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment." Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Department of Justice, National Institute of Corrections, 2004 edition, p. 9-10. Furthermore, based upon a March 2005 report addressing life expectancy in the United States and prepared for the United States Congress as well as a report by the National Center for Health Statistics, which is part of the United States Department of Health and Human Services, Centers for Disease Control and Prevention, the United States life expectancy at birth for a male born in 1955 in 67.4. See LAURA SHRESTHA, CONG. RESEARCH SERV., RL32792, LIFE EXPECTANCY IN THE UNITED STATES, available at http://www.cnie.org/NLE/CRS/abstract.cfm?NLEid=64177. Though not born in the United States, this fact is relevant to Mr. Dinizo's future health status and bears out why it is appropriate to impose a concurrent sentence pursuant to the factors at § 3553(a).

3. **The Need for the Sentence Imposed.**

   a. **Reflect Seriousness of Offense/Promote Respect for the Law/Provide Just Punishment.**

This case and the previously concurrent state case, both of which stem from a common scheme or plan, represents Mr. Dinizo's first exposure to prison. A 360-month term in prison, which is the statutory maximum allowed, thus, will be more significant for him than for a defendant who previously had been imprisoned. See United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006). In this vein, such a sentence would accurately reflect the seriousness of the offense and promote respect for the law. Such a sentence is at the individual statutory maximum as well. Mr. Dinizo's time in custody will be more difficult and riskier than for any other type of inmate given his conduct, especially while in state custody. The nature of the instant offense will make him a target of attack and abuse. See United States v. Parish, 308 F.3d 1025 (9th Cir. 2002). His advanced age at the time of any potential release in the future further demonstrates that the requested sentence is a just punishment.

   b. **Afford Adequate Deterrence and Protect the Public from Further Crimes.**

The requested sentence also is consistent with these § 3553(a) factors. First, as mentioned above, this is Mr. Dinizo's first exposure to criminal proceedings. As a result, this and the state conviction are his only convictions to date. A 360-month prison term with lifetime supervised release will be an effective sanction given Mr. Dinizo's first offender status. As such, it will have a *specific*

deterrent effect on him. It also will send a message *generally* to others than such conduct will carry serious penalties. Thus, both specific and general deterrence are satisfied.

As a general matter, as well as being costly, imprisonment is not efficacious particularly where the offender is not as likely to commit future crimes as a younger offender. See e.g., United States v. Carmona-Rodriguez, 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) (noting that defendants "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants"); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age).

Notwithstanding the reduced likelihood of recidivism given Mr. Dinizo's age at the time of any potential for release, a lifetime of supervised release and registering as a sex offender will assist in protecting the public. Mr. Dinizo, however, will be taken into immigration custody upon release from any prison sentence and will be deported from the United States. This, too, will protect the United States' public. It should be noted that Mr. Dinizo has been in the United States since the age of six and has no family that he is aware in Italy any longer. Even if not deported, he faces potential civil confinement as a convicted sex offender.

**D.     Conclusion.**

After considering the United States Sentencing Guidelines and the additional factors addressed above, this Court should sentence Mr. Dinizo to 360 months' custody on each of the § 2251(a) counts, 240 months' prison on the § 2252A(a)(1) count, and order that these sentence run concurrent to one another and concurrent with the undischarged state term, which is sufficient but not greater than necessary.

Respectfully Submitted,

Jason T. Ser
Assistant Federal Defender


cc: Marcia Cohen, A.U.S.A.